**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
OHIO
WESTERN DIVISION**

| | |
|---|---|
| WILMA BROWN, on behalf of the HENNY PENNY CORPORATION EMPLOYEE STOCK OWNERSHIP PLAN, and on behalf of a class of all other persons similarly situated, <br><br>           **Plaintiff,** <br><br> **v.** <br><br> WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company, <br><br>           **Defendant.** | **Case No. 3:17-cv-250** |

## COMPLAINT

Plaintiff Wilma Brown, by her undersigned attorneys, on behalf of the Henny Penny Corporation Employee Stock Ownership Plan and similarly situated participants in the Plan, and their beneficiaries, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.     Plaintiff Wilma Brown ("Plaintiff") brings this suit against Wilmington Trust, N.A. as successor to Wilmington Trust Retirement and Institutional Services Company (together, "Wilmington Trust"), the trustee for the Henny Penny Corporation Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of Henny Penny Corporation ("Henny Penny") in 2014.

1

2.      Plaintiff is a participant in the Plan and is vested in shares of Henny Penny allocated to her account in the Plan.

3.      This action is brought under Sections 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1106, 1109, and 1132(a), for losses suffered by the Plan, and other relief, caused by Wilmington Trust when it authorized the Plan to buy shares of Henny Penny for more than fair market value.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Wilmington Trust's violations of ERISA's prohibited transaction rules.

5.      Henny Penny is and was at all relevant times a privately-held company and a party in interest to the Plan. On December 30, 2014, the Plan purchased from party in interest sellers, members of the Cobb family (the "Sellers"), 1,600,000 shares of Henny Penny common stock for $165,000,000, which was paid for by a $165,000,000 loan from Henny Penny to the Plan with an interest rate of 2.74% per annum to be repaid over a 45 year period (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, Henny Penny became 100% employee-owned.

6.      Wilmington Trust represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority over whether to go through with the ESOP Transaction.

7.      The ESOP Transaction allowed the Sellers to unload their interests in Henny Penny at an inflated price, and saddle Plan participants with millions of dollars of debt to finance the Transaction. Wilmington Trust failed to fulfill its duties as Trustee to the Plan and Plan participants, including Plaintiff.

2

8.     Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by her and similarly situated participants, resulting from Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA.

## JURISDICTION AND VENUE

9.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require Wilmington Trust to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

10.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

11.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

12.     At all relevant times, Plaintiff Wilma Brown has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Plaintiff Brown resides in Eaton, Ohio. She is vested in shares of Henny Penny in her Plan account. She was employed by Henny Penny for 30 years, serving as a Manufacturing Facilitator for the last 18 years.

13.     Defendant Wilmington Trust is a trust company chartered in Delaware. Its main office is at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust is a wholly-owned subsidiary of Wilmington Trust Corporation, which is also headquartered at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust Corporation is a wholly-owned division of M&T Bank Corporation. M&T Bank Corporation is headquartered in Buffalo, New York.

14.     Wilmington Trust was the Trustee of the Plan for the ESOP Transaction. As Trustee, Wilmington Trust had exclusive discretion to authorize the ESOP Transaction.

15.     Wilmington Trust at all relevant times was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Trustee, within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

16.     Under the terms of the Henny Penny Corporation Employee Stock Ownership Trust effective as of January 1, 2014 (the "Trust Agreement"), and the Trustee Engagement Agreement entered into on November 5, 2014, Wilmington Trust was a discretionary trustee of the Trust with respect to the Plan's purchase of Henny Penny stock on December 30, 2014. Wilmington Trust became the Trustee effective November 5, 2014.

17.     Wilmington Trust was a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at all relevant times.

18.     Wilmington Trust's power and authority does not include the power and authority to interpret the terms of the written Plan document.

4

## FACTUAL ALLEGATIONS

19.     Headquartered in Eaton, Ohio, Henny Penny bills itself as "one of the country's leading designers and manufacturers of premium foodservice cooking, holding and display equipment for thousands of restaurants, supermarkets and institutions around the world." Henny Penny owns Wood Stone Corporation ("Wood Stone"), the leading global manufacturer of stone hearth and specialty cooking equipment. Henny Penny was at all relevant times a privately held entity with more than 600 employees. For 40 years, until its purchase by the Plan, Henny Penny was owned by members of the Cobb family.

20.     Henny Penny is headquartered at 1219 U.S. 35 West, Eaton, Ohio 45320.

21.     Henny Penny is and has been an S corporation at all relevant times.

22.     Henny Penny stock is not readily tradable on an established securities market.

23.     Henny Penny adopted the Plan with an effective date of January 1, 2014.

24.     The Plan's written document was amended and restated effective as of January 1, 2017 (hereafter, the "2017 Restated Plan") (Attachment A hereto).

25.     The 2017 Restated Plan was made on March 15, 2017.

26.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

27.     Henny Penny identified the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of Henny Penny.

28.     The Plan's principal asset was at all times Henny Penny stock.

29.     The Plan is an individual account plan under which a separate individual account was established for each participant.

5

30. The Plan Year is the calendar year, beginning each January 1st and ending the following December 31st.

31. Each Plan participant's account is credited as of the last day of each Plan Year with an allocation of shares of the Henny Penny common stock released by Wilmington Trust, as Trustee, from the unallocated account and forfeitures of terminated participants' non-vested accounts.

32. Allocations are based on a participant's eligible compensation, as defined by the Plan, relative to total eligible compensation.

33. Plan earnings are allocated to each participant's account based on the ratio of the participant's beginning of the year account balance to all participants' beginning of the year account balances.

34. An allocation to participants' individual accounts took place as of or on December 31, 2014.

35. Plaintiff's individual stock account in the Plan was allocated 83.8920 shares of Henny Penny stock in 2014.

36. Henny Penny is and was the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), and is the "Sponsoring Employer" under the terms of the Plan.

37. Employees of Henny Penny, Wood Stone, Wood Stone Ideas, LLC and IWD Innovations, LLC participate in the Plan.

38. The Plan is and was administered at Henny Penny's corporate headquarters in Eaton, Ohio.

39.     Henny Penny is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

40.     Henny Penny is and was an ERISA fiduciary to the Plan as its administrator.

41.     Henny Penny is and was a provider of services to the Plan as its administrator.

42.     All the Plan's Forms 5500, Annual Return/Report of Employee Benefit Plan, identify Henny Penny as the sponsor and administrator of the Plan.

43.     Henny Penny is a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

44.     The Schedule of Assets (Held At End of Year) in the Plan's 2015 Form 5500 filing identifies Henny Penny as a party in interest.

45.     Henny Penny appointed Wilmington Trust as Trustee of the Plan in 2014 to represent the Plan in the proposed ESOP Transaction. As Trustee, Wilmington Trust had sole and exclusive authority to approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Henny Penny stock.

46.     As Trustee for the Plan, it was Wilmington Trust's exclusive duty to ensure that any transactions between the Plan and the Sellers, and between the Plan and Henny Penny, including acquisitions of Henny Penny stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

47.     Wilmington Trust engaged Stout Risius Ross ("SRR") to be its valuator in the ESOP Transaction.

48.     On December 30, 2014, the Plan purchased from the Sellers 1,600,000 shares of Henny Penny common stock for $165,000,000.

49.     The Sellers were members of the Steve Cobb family, including Steve Cobb.

50. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Steve Cobb and the other Sellers were each a 10 percent or more shareholder, directly or indirectly, of Henny Penny at the time of the ESOP Transaction. All of the Sellers (other than Steve Cobb) were "relatives" of Steve Cobb within the meaning of ERISA § 3(15), 29 U.S.C. § 1002(15).

51. The Plan paid for the 1,600,000 shares of Henny Penny common stock with a $165,000,000 term loan from Henny Penny to the Plan with an interest rate of 2.74% per annum to be repaid over a 45 year period.

52. With the Plan's purchase of the 1,600,000 shares of Henny Penny common stock, Henny Penny became an employee-owned company.

53. CSG Partners, LLC ("CSG"), a New York-based boutique investment bank, advised Henny Penny in the ESOP Transaction.

54. As reported in a CSG news release, Steve Cobb, the Chairman of Henny Penny, said: "None of this could have happened without CSG Partners and the team they assembled. I am thankful for their expertise, advice, and attentiveness through every stage of the transaction." *CSG Partners Advises Henny Penny on ESOP Transaction*, CSG Partners News Release (Jan. 19, 2015).

55. CSG marketing materials say it can structure ESOP transactions such that selling shareholders will continue to control the company, exercising control through the board of directors and other corporate governance tools, even where the ESOP purchases 100% of the company.

56.    Henny Penny was founded in 1957 and purchased by employees Jack Cobb and Cecil Pruitt in 1974. Jack Cobb became the sole owner of Henny Penny in 1985.

57.    Henny Penny was owned by members of the Steve Cobb family when the Plan purchased their shares of Henny Penny stock in the ESOP Transaction on December 30, 2014.

58.    Steve Cobb is the son of Jack Cobb, and is a former President and Chief Executive Officer ("CEO") of Henny Penny. Steve Cobb was CEO of Henny Penny from 1997 to September 2014.

59.    Henny Penny announced a new leadership structure in October 2014, approximately two months before the sale of the company to employees, with Steve Cobb as Chairman and Rob Connelly as President and CEO of Henny Penny.

60.    Prior to and at the time of the ESOP Transaction, Steve Cobb was Chairman of the Board of Directors and a shareholder of Henny Penny.

61.    After the ESOP Transaction, Steve Cobb continued in the role of Chairman of the Board of Directors of Henny Penny.

62.    Steve Cobb and the other Sellers, members of the Cobb family, were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction.

63.    Before, at the time of, and after the ESOP Transaction, Rob Connelly was President and CEO of Henny Penny.

64.    Before, at the time of, and after the ESOP Transaction, Kurt Eickmeyer was President of Wood Stone.

65.    On January 8, 2015, nine days after the ESOP Transaction, employees were first informed that they had become the owners of Henny Penny and that the Plan had been created.

9

At that time, Henny Penny announced: "There will be no changes in leadership or operations for either Henny Penny or Wood Stone. Rob Connelly, announced last October as President and CEO of Henny Penny, will continue in his position as will all current members of its senior leadership. Kurt Eickmeyer, President of Wood Stone, will continue in his position as will all current members of its senior leadership." *Henny Penny Becomes Employee-Owned Company*, News From Henny Penny (Jan. 8, 2015).

66. Despite the change in ownership, Rob Connelly announced: "We will continue with business as usual." *Henny Penny Becomes Employee-Owned Company*, News From Henny Penny (Jan. 8, 2015).

67. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. In March 2014, Steve Cobb and Rob Connelly first met with CSG's George Thacker, with whom they developed a transition and transaction strategy that allowed Steve Cobb to remain in control of Henny Penny by the following means: as Chairman; by putting his people into leadership positions that would endure after the sale to the Plan; and by engaging a trustee that would essentially rubber stamp transaction terms that would ensure that the Cobbs remained in control while receiving a premium for their stock that a truly independent buyer would not pay without receiving control of the company. Rob Connelly was installed as Henny Penny's CEO in September 2014, and a new leadership structure for the company was announced in October 2014. CSG sold this strategy to Steve Cobb as a means for the Sellers to maximize profit on the sale of their stock while maintaining control of Henny Penny, which could not be achieved by selling Henny Penny to a non-ESOP, independent third-party buyer. CSG recommended that Henny Penny retain Wilmington Trust to represent the Plan as Trustee in the ESOP Transaction.

10

68. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan paid a control premium for Henny Penny even though the Plan did not obtain control over the Henny Penny Board of Directors upon its 2014 purchase of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for Henny Penny stock.

69. As Trustee, Wilmington Trust is subject to liability for a payment by the Plan of more than fair market value for Henny Penny stock caused by the Plan's payment of a control premium where the previous owner(s) retained control of Henny Penny, the Plan's failure to receive a discount for lack of control, and/or other factors in Wilmington Trust's faulty valuation of Henny Penny stock in the ESOP Transaction.

70. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Wilmington Trust did not perform due diligence similar to the due diligence that is performed by third-party buyers in large corporate transactions in the course of the ESOP Transaction. Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of businesses, which Wilmington Trust distinguished as "real world" transactions.

71. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan overpaid for Henny Penny stock in the ESOP Transaction due to Wilmington Trust's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test

11

assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of Henny Penny stock in the ESOP Transaction faulty.

72.     The U.S. District Court for the Eastern District of Virginia recently decided a case with the same defendant (Wilmington Trust); same investment bank (CSG); same valuator (SRR); same kind of transaction (an ESOP transaction); and same lousy outcome for participants (overpayment on stock). *See Brundle v. Wilmington Trust N.A.*, No. 1:15-cv-1494, 2017 WL 979106 (E.D. Va. Mar. 13, 2017). CSG is Wilmington Trust's largest source of business referrals. *See id.* at *4 ("CSG was listed as the referral for more than 50% of Wilmington's ESOP projects"). The *Brundle* court found that Wilmington Trust has a "tendency to rubber stamp whatever [CSG's client] Constellis and SRR [valuator Stout Risius Ross] put in front of it." *Id.* at *24. As Wilmington Trust's Assistant Vice President and Fiduciary Services Sub-Committee ("FSSC") member Greg Golden testified, Wilmington Trust does a lesser level of due diligence as an ESOP trustee than does a so-called "real world buyer" of a multimillion dollar company. *Id.* at *20. Following trial, the *Brundle* court ruled that Wilmington Trust caused a prohibited transaction by failing to ensure that the plan paid no more than adequate consideration for company stock and "damaged the ESOP by agreeing to overpay $29,773,250.00 for the stock." *Id.* at *31. Plaintiff alleges the same thing happened here.

73.     Greg Golden worked on the Henny Penny ESOP Transaction, and is the signer of the Trust Agreement on behalf of the Trust and Wilmington Trust as Trustee.

74.     Incentives to Wilmington Trust to act in favor of the Sellers in the ESOP Transaction included the possibility of: continued referrals of business by CSG; business from sellers of companies who understood that Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of

businesses, which Wilmington Trust distinguished as "real world" transactions; and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

75. Wilmington Trust is liable to the Plan for the difference between the price paid by the Plan and the actual value of Henny Penny shares at the time of the ESOP Transaction.

76. Wilmington Trust has received consideration for his own personal account from Henny Penny in the form of fees and the payment or reimbursement of Wilmington Trust's legal costs would constitute additional consideration.

77. The 2017 Restated Plan contains an "Arbitration Procedure" clause which Plaintiff did not sign or agree to, and which was not disclosed to her until after she had become a participant in the Plan and after Henny Penny stock had been allocated to her individual account in the Plan.

78. Plaintiff does not possess or have access to an earlier version of the Plan, prior to the 2017 Restated Plan. The Plan's administrator did not produce any earlier version of the Plan to her despite being asked, in a request made pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), for "All written instruments under which the Plan was/is established and operated, including but not limited to the Plan's master documents, contracts . . . ."

79. Plaintiff left her employment at Henny Penny in May 2015 and did not receive consideration for the Arbitration Procedure, or any other new provision, in the 2017 Restated Plan.

80. The 2017 Restated Plan's Arbitration Procedure provides, *inter alia*, the invalid and unenforceable provision that: "As a condition to any (i) Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant, or Beneficiary receiving any

benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims." 2017 Restated Plan § 12.21.

81. Under the 2017 Restated Plan, "Covered Claims" include, *inter alia*: "Any claim by a Claimant which arises out of, relates to, or concerns this Plan, the Trust, or the Trust Fund, including without limitation, . . . any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code."

82. The 2017 Restated Plan's Arbitration Procedure further purports to eliminate a Plan participant's right to bring actions or arbitrations on behalf of the Plan for relief to the Plan as a whole, including any relief for other employees, participants, or beneficiaries, or on behalf of a class.

83. Section 12.21(b) of the 2017 Restated Plan provides: "**No Group, Class or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefit or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long

14

as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant, and is not binding on the Administrator or Trustee with respect to any employee, participant or beneficiary other than the Claimant. The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section 12.21, Mandatory and Binding Arbitration Procedure ('Arbitration Procedure'). In the event a court or arbitrator of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure (*i.e.*, all of Section 12.21) shall be rendered null and void in all respects." 2017 Restated Plan § 12.21(b) (emphasis in original).

84.     The Arbitration Procedure in the 2017 Restated Plan is invalid and unenforceable as a matter of law. The Arbitration Procedure is unlawful under ERISA, violates applicable provisions of the Internal Revenue Code (the "Code"), and, by its own terms, is null and void in its entirety.

85.     Wilmington Trust is not contractually required to demand enforcement of the Plan's Arbitration Procedure in suits against it. Section 10.9 of the Trust Agreement explains, in relevant part: "The Trustee is not a party to the Plan, and in no event shall the terms of the Plan, either expressly or by implication, be deemed to impose upon the Trustee any duties or obligations. The Trustee's duties and obligations as a trustee shall be determined solely and exclusively under the terms of the Trust Agreement and ERISA or other applicable law . . . To

the extent the provisions of the Plan and this Trust Agreement conflict, the provisions of the Trust will govern to the extent of the Trustee's duties and obligations."

86.     The 2017 Restated Plan contains a payment/reimbursement clause, Section 12.6, providing that Wilmington Trust's costs, fees and expenses in this suit may be paid or reimbursed by the Plan's Trust or by Henny Penny, which the Plan owns. That provision is null and void under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy.

87.     Section 5.3 of the Trust Agreement provides Wilmington Trust a "Right of Indemnification" from Henny Penny and its subsidiaries. That provision is null and void under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy.

88.     Payment by Henny Penny of millions of dollars of attorneys' fees, costs and litigation expenses to Wilmington Trust's counsel necessarily would adversely impact Henny Penny's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Wilmington Trust's defense costs by Henny Penny or the Plan would adversely affect the Plan and Plaintiff's and other participants' financial interests.

89.     Outside of plan and trust documents, Wilmington Trust has obtained separate indemnification agreements requiring payment of its legal defense costs by ESOP-owned companies for litigation following its services as trustee in ESOP transactions. *See*, *e.g.*, *Brundle v. Wilmington Trust N.A.*, No. 1:15-cv-1494, 2017 WL 979106, at *27 (E.D. Va. Mar. 13, 2017). Prior to discovery, Plaintiff, a Plan participant, does not have access to the ESOP Transaction documents, including engagement agreements, and any indemnification agreements therein.

90.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. One or more agreements or instruments other than the 2017 Restated Plan and the

Trust Agreement contains an agreement providing for the payment or indemnification of Wilmington Trust's defense costs in this lawsuit by the Plan, its Trust, or the company its owns, Henny Penny. Such agreement is null and void under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy.

91.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Prior to 2017, the Plan did not contain one or more of the following provisions: the Section 12.21 Arbitration Procedure, which provides *inter alia* that vested Plan benefits will not be paid if the Arbitration Procedure is not followed; the Sections 9.5 and 12.12 full satisfaction and release of claims provisions, which provide *inter alia* that participants are (§ 9.5) or may be (§ 12.12) required to sign releases as a condition precedent to receiving their vested benefits and that such benefit payments are "in full satisfaction" of all claims against the Trustee and other persons; and the Plan § 12.6 payment/reimbursement provision, which provides for the payment of the Trustee's and Administrator's litigation defense costs by the Plan or the company the Plan owns. The Internal Revenue Service ("IRS") did not review or approve the 2017 Restated Plan or Plan operations after that document went into effect, and has not issued a determination letter upon consideration of the 2017 Restated Plan. The 2017 Restated Plan's provisions and operation disqualify the Plan under Code § 401, 26 U.S.C. § 401. The Plan's amendments result in cutbacks in violation of Code § 411(d)(6). The Plan does not meet the "exclusive benefit test." *See* 26 U.S.C. § 401(a); 26 C.F.R. § 1.401-1(a)(3)(ii). The Plan is not being operated in accordance with the plan document in violation of Code § 401(a)(1). The Plan was not and is not an employee stock ownership plan ("ESOP") under ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6),

or an eligible individual account plan ("EIAP") under ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3).

## CLAIMS FOR RELIEF

## COUNT I

### Causing and Engaging in Prohibited Transactions Forbidden by
### ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b)

92.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

93.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Wilmington Trust, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Henny Penny stock, with a party in interest, here the Sellers, as took place in the ESOP Transaction.

94.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Wilmington Trust from causing the Plan to borrow money from a party in interest, here Henny Penny, as took place in the ESOP Transaction.

95.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Wilmington Trust from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Sellers, of any assets of the ESOP, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for Henny Penny stock and in continuing payments on the loan.

96.     ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E), prohibits Wilmington Trust from causing the Plan to acquire Henny Penny securities in violation of ERISA § 407(a), as took place in the ESOP Transaction.

97.     The stock and loan transactions between the Plan and the parties in interest were authorized by Wilmington Trust in its capacity as Trustee for the Plan.

98.     Wilmington Trust caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

99.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

100.    Wilmington Trust acted on behalf of the Sellers in connection with the Plan's stock and loan transactions in the ESOP Transaction by causing the Plan to acquire Henny Penny stock from the Sellers at an inflated price and a loan from Henny Penny that was used to pay the Sellers over a 45 year term. This greatly benefited the Sellers to the substantial detriment of the Plan, even though Wilmington Trust was required to serve the interests of the Plan in connection with any such transaction.

101.    Wilmington Trust received compensation from Henny Penny as Trustee for the Plan in violation of ERISA § 406(b)(3).

102.    Wilmington Trust caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

103.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

104.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

105.    Wilmington Trust has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

106.    The losses suffered by the participants in the Plan are coterminous with those of the Plan, and Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT II

**Invalidation of Arbitration Procedure and Full Satisfaction/Release of Claims Provisions Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

107.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

108.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

109.    The "Arbitration Procedure" clause at Section 12.21 of the 2017 Restated Plan and the full satisfaction and release of claims clauses at Sections 9.5 and 12.12 (the "Release Clauses") of the 2017 Restated Plan violate provisions of Title I of ERISA. ERISA § 502(a)(3) injunctive and other equitable relief invalidating Sections 12.21, 9.5 and 12.12 is appropriate.

110.    Section 12.21 purports to waive Plaintiff's and participants' statutory rights; it is invalid under ERISA and the statute's underlying public policy.

111.    Section 12.21(b) impermissibly restricts Plaintiff's and other participants' statutory rights under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), which empower plan participants to bring claims on behalf of a plan for relief to the plan. Congress

21

enacted these provisions to allow participants and beneficiaries to protect the financial integrity of their plans and they reflect a special congressional concern about the management of plan assets. Section 12.21(b) impermissibly attempts to divest participants, beneficiaries, and the federal courts of plan-wide remedies for ERISA § 406 prohibited transactions and breaches of ERISA § 404 fiduciary duties.

112.    Section 12.21(b) is not severable from the Arbitration Procedure. By its terms, because Section 12.21(b) is "unenforceable or invalid," Section 12.21 is "null and void in all respects."

113.    Because Section 12.21(b) is unlawful, the statement of ERISA rights in the Plan's Summary Plan Description ("SPD") as of January 1, 2017, is misleading and inaccurate, violating 29 C.F.R. § 2520.102-3(t) and ERISA § 104(c), 29 U.S.C. § 1024(c).

114.    Section 12.21 purports to impose the following conditions (the "Eligibility and Receipt Conditions"): "As a condition to any (i) Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant or Beneficiary receiving any benefit under this Plan, such Employee, Participant or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims."

115.    The Eligibility and Receipt Conditions impermissibly restrict Plaintiff's and other participants' statutory rights under ERISA §§ 202, 203, 204(g), 502(a) and 510, 29 U.S.C. §§ 1052, 1053, 1054(g), 1132(a), and 1140. In violation of ERISA's participation, vesting, discrimination and civil enforcement standards, the Eligibility and Receipt Conditions place unlawful conditions on and unlawfully interfere with Plaintiff's rights to benefits, in which she

had vested before the 2017 amendment, her participant status, and to bring a civil action for relief for her and the Plan's injuries.

116.    The Release Clauses at Sections 9.5 and 12.12 impermissibly restrict Plaintiff's and other participants' statutory rights under ERISA §§ 404, 406, 409, 413 and 502(a), 29 U.S.C. §§ 1104, 1106, 1109, 1113 and 1132(a), which, *inter alia*, empower plan participants to bring claims for violations of ERISA or a plan within the statutory limitations period, including claims that were not known to a participant upon a distribution from a plan. The Release Clauses' requirement that a payment of benefits "be in full satisfaction of all claims hereunder against the Administrator and Trustee" or "against the Trust, the Trustee, the Employer and the Administrator" violates ERISA.

117.    The Release Clauses' provisions that participants will be denied their vested benefits if they do not "execut[e] a receipt and release acceptable to the Trustee, Administrator, or Employer" violates ERISA and the Plan, including but not limited to the eligibility and vesting provisions in effect when and after Plaintiff became a Plan participant and vested in her benefits.

118.    New provisions in Sections 9.5, 12.12 and 12.21 are invalid as violating the ERISA § 204(g), 29 U.S.C. § 1054(g), anti-cutback provision, which provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." Under 26 C.F.R. § 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of the plan."

119.    ERISA § 3(23), 29 U.S.C. § 1002(23), defines "accrued benefit" in an individual account plan as "the balance of the individual's account."

120.    The accrued benefits protected from elimination by amendment under ERISA § 204(g) include the conditions on which the benefits are to be paid under the plan. Accrued

benefits are considered "decreased" for purposes of ERISA § 204(g) not only when they are reduced in size or eliminated entirely, but also when the plan imposes new conditions or materially greater restrictions on their receipt.

121.    Sections 9.5, 12.12 and 12.21 of the 2017 Restated Plan place new conditions or materially greater restrictions on Plaintiff's and participants' receipt of benefits under the Plan.

122.    By changing the conditions for Plaintiff's and participants' receipt of benefits, as well as for eligibility to participate and to receive contributions, the 2017 Restated Plan decreased and in fact eliminated accrued benefits of Plaintiff and other participants.

123.    As a result, the amendments in the 2017 Restated Plan constituted a prohibited cutback of benefits in violation of ERISA § 204(g) as to Plaintiff and the Class.

124.    As a result of the foregoing, Sections 9.5, 12.12 and 12.21 of the 2017 Restated Plan should be declared void *ab initio* and Wilmington Trust and any other Plan fiduciary should be enjoined from applying or seeking to apply them.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B), 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B)

125.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

126.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve Wilmington Trust, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable here.

127. Section 12.6 of the 2017 Restated Plan, in relevant part, purports to provide direct payment or reimbursement for the benefit of Wilmington Trust for its defense costs: "Unless otherwise prohibited by law, the Trust will directly pay, or reimburse the Trustee and/or the Administrator for, all costs, and attorneys' fees and other expenses associated with any claim, suit, arbitration, or other proceeding brought by a Claimant against them. Notwithstanding the foregoing, the Sponsoring Employer may elect to pay, or reimburse the Trustee and/or Administrator for, such costs, attorneys' fees and other expenses in lieu of the Trust paying such amounts." Section 1.12 of the 2017 Restated Plan defines "Claimant" as "an Employee, Participant, or Beneficiary." Under Section 1.76 of the 2017 Restated Plan, the "Sponsoring Employer" is Henny Penny.

128. Section 12.6 effectively contains no limitation on payment or indemnity by the Plan's Trust or Henny Penny, at any time in the course of litigation or after final judgment, to or for the benefit of Wilmington Trust of its costs, attorneys' fees and other expenses ("Defense Costs"). The 2017 Restated Plan does not define the ambiguous "unless otherwise prohibited by law" caveat, which raises disputable questions of law and mixed issues of law and fact.

129. Section 5.3 of the Trust Agreement purports to indemnify Wilmington Trust, from the funds of Henny Penny or its subsidiaries, for "any loss, liabilities, cost, attorneys' fees, expenses or other damage" resulting from, *inter alia*, any "legal proceedings, actions, suits, or arbitrations related in any way to the Trust Agreement." Section 5.3 provides that "the Right of Indemnification shall not apply to the extent (x) that it is prohibited by Section 410 of ERISA or (y) that any loss, cost, expense or damage with respect to which any Indemnified Party seeks indemnification is held by a court of competent jurisdiction, in a judgment from which an appeal could have been taken but was not taken, or which was appealed but was affirmed on appeal, to

have resulted from the Indemnified Party's breach of its fiduciary duties under Title I of ERISA, bad faith, fraud, criminal act, gross negligence or willful misconduct (a 'Non-Indemnity Loss'). In the event of a Non-Indemnity Loss, the Company shall be entitled to recover from the Indemnified Party any and all costs and expenses paid on their behalf pursuant to this paragraph."

130.    Section 5.3 effectively contains no limitation on payment or indemnity by Henny Penny and its subsidiaries, at any time in the course of litigation or after final judgment, to or for the benefit of Wilmington Trust of its Defense Costs. The unless "prohibited by Section 410 of ERISA" caveat is again a truism that raises issues of law and fact, and the part (y) exception does not address violation of the *per se* rules under ERISA § 406.

131.    To the extent that 2017 Restated Plan § 12.6, Trust Agreement § 5.3, or any other agreement or instrument attempts to relieve Wilmington Trust of its responsibility or liability to discharge its duties under ERISA, or attempts to have the Plan and its Trust or Henny Penny (a Plan-owned company) and thereby the Plan be responsible for Wilmington Trust's liability or breaches of the statute, including but not limited to Defense Costs, such provisions are void as against public policy.

132.    To the extent that any of the fiduciaries of the Plan would agree to the establishment or exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise

26

of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

133.    As a result of the foregoing, 2017 Restated Plan § 12.6, Trust Agreement § 5.3, and any other agreement or instrument providing for payment or indemnification by the Plan, its Trust or Henny Penny in violation of ERISA should be declared void *ab initio* and Wilmington Trust should be enjoined from seeking and accepting payment from the Plan, its Trust, Henny Penny, or its subsidiaries under such provisions.

## CLASS ACTION ALLEGATIONS

134.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the Henny Penny Corporation Employee Stock Ownership Plan and the beneficiaries of such participants. Excluded from the Class are the shareholders who sold their Henny Penny Corporation ("Henny Penny") stock to the Plan and their immediate families; the directors of Henny Penny; and legal representatives, successors, and assigns of any such excluded persons.

135.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's Form 5500 filing for 2015 indicates that as of December 31, 2015, there were 667 participants and deceased participants whose beneficiaries were receiving or entitled to receive benefits in the Plan.

136.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

> i.  Whether Wilmington Trust served as Trustee in the Plan's acquisition of Henny Penny stock;

27

ii.  Whether Wilmington Trust was an ERISA fiduciary of the Plan;

iii. Whether Wilmington Trust caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Henny Penny stock and take a loan from parties in interest;

iv.  Whether Wilmington Trust engaged in good faith valuations of the Henny Penny stock in connection with the ESOP Transaction;

v.   Whether Wilmington Trust caused the Plan to pay more than fair market value for Henny Penny stock;

vi.  Whether Wilmington Trust engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii. Whether Wilmington Trust engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

viii. Whether the sellers of Henny Penny stock to the Plan were parties in interest;

ix.  The amount of losses suffered by the Plan and its participants as a result of Wilmington Trust's ERISA violations; and

x.   The appropriate relief for Wilmington Trust's violations of ERISA.

137.   Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan paid an inflated price and took on excessive loans for Henny Penny stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in

the present because Wilmington Trust failed to correct the overpayment by the Plan in its time as Trustee.

138.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

139.    Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Wilmington Trust, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

140.    In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wilmington Trust has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Wilmington Trust's violations of ERISA.

141.    The names and addresses of the Class members are available from Defendant and the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant and for the following relief:

A.   Declare that Defendant Wilmington Trust caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.   Enjoin Defendant Wilmington Trust from further violations of ERISA and its responsibilities, obligations, and duties;

C.   Order that Defendant Wilmington Trust make good to the Plan and/or to any successor trust(s) the losses resulting from its breaches of ERISA and restore any profits it has made through use of assets of the Plan;

D.   Order that Defendant Wilmington Trust provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant Wilmington Trust;

E.   Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

F.   Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendant Wilmington Trust's breaches of ERISA;

G.   Order that Section 12.6 of the 2017 Restated Plan, Section 5.3 of the Trust Agreement, and any other provision in violation of ERISA § 410 in any other agreement or instrument is declared void *ab initio*, and that Defendant Wilmington Trust is enjoined from seeking or accepting payment from the Plan, its Trust, Henny Penny or its subsidiaries under such provisions;

H.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I.     Order Defendant Wilmington Trust to disgorge any fees it received in conjunction with its services as Trustee for the Plan as well as any earnings and profits thereon;

J.     Order Defendant Wilmington Trust to pay prejudgment interest;

K.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel; and

L.     Award such other and further relief as the Court deems equitable and just.

Dated:  July 27, 2017                                   Respectfully submitted,

                                                        MURRAY MURPHY MOUL + BASIL LLP

                                                         By:  /s/ Brian K. Murphy
                                                        Brian K. Murphy (0070654), Trial Attorney
                                                        1114 Dublin Road
                                                        Columbus, Ohio 43215
                                                        Telephone: (614) 488-0400
                                                        Facsimile: (614) 488-0401
                                                        murphy@mmmb.com

                                                        BAILEY & GLASSER LLP

                                                        Gregory Y. Porter (*pro hac vice* to be filed)
                                                        Ryan T. Jenny  (*pro hac vice* to be filed)
                                                        1054 31st Street, NW, Suite 230
                                                        Washington, DC 20007
                                                        Telephone: (202) 463-2101
                                                        Facsimile: (202) 463-2103
                                                        gporter@baileyglasser.com
                                                        rjenny@baileyglasser.com

                                                        *Attorneys for Plaintiff*