IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILMA BROWN, on behalf of
the HENNY PENNY
CORPORATION EMPLOYEE
STOCK OWNERSHIP PLAN, and
on behalf of a class of all other
persons similarly situated,

      Plaintiffs,

v.

WILMINGTON TRUST, N.A., as
successor to Wilmington Trust
Retirement and Institutional
Services Company,

      Defendant.

:

:

:

Case No. 3:17-cv-250

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING MOTION OF HENNY PENNY
CORPORATION TO COMPEL INDIVIDUAL ARBITRATION AND TO
STRIKE ANY CLAIMS PURPORTEDLY BROUGHT ON A CLASS OR
REPRESENTATIVE BASIS (DOC. #13); OVERRULING DEFENDANT
WILMINGTON TRUST, N.A.'S MOTION TO COMPEL ARBITRATION
(DOC. #14)

---

Plaintiff Wilma Brown, on behalf of the Henny Penny Corporation Employee Stock Ownership Plan (the "Plan" or "ESOP"), and on behalf of a class of all other persons similarly situated, filed suit against Wilmington Trust, N.A. ("Wilmington Trust"), as successor to Wilmington Trust Retirement and Institutional Services Company, which was the Plan's trustee in 2014 when the Plan acquired shares of the Henny Penny Corporation. Plaintiff alleges that Wilmington Trust engaged in

prohibited transactions and paid more than fair market value for the stock, causing losses to the Plan and its participants. Brown seeks declaratory and injunctive relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1106, 1109, and 1132(a), as well as damages for losses suffered by the Plan.

This matter is currently before the Court on two pending motions: (1) Motion of Henny Penny Corporation to Compel Individual Arbitration and to Strike Any Claims Purportedly Brought on a Class or Representative Basis (Doc. #13)[1]; and (2) Wilmington Trust, N.A.'s Motion to Compel Arbitration (Doc. #14).

I.  **Background and Procedural History**

Henny Penny Corporation ("Henny Penny") manufactures foodservice equipment. It was owned by the Cobb family until December 30, 2014, when the corporation sold all of its stock to the Henny Penny Corporation Employee Stock Ownership Plan (the "Plan" or "ESOP") for $165,000,000. In order to facilitate this transaction, Henny Penny, as the Sponsoring Employer, appointed Wilmington Trust Retirement and Institutional Services Company as Trustee of the Plan. The Trustee represented the Plan and its participants in the ESOP transaction and had sole authority to authorize the stock purchase. The stock purchase was paid for

---

[1] In a contemporaneous filing, the Court has granted Henny Penny leave to intervene as a limited-in-scope third party plaintiff.

by a $165,000,000 loan from Henny Penny to the Plan, to be repaid over 45 years.

The Plan is a pension plan, governed by ERISA, with individual accounts established for each participant. It is administered by the ESOP Committee, which was appointed by Henny Penny. Effective January 1, 2017, the Plan was amended to add a Mandatory and Binding Arbitration provision. This provision, Section 12.21, requires arbitration of all "Covered Claims" asserted by a "Claimant," and requires that these claims be brought solely in the Claimant's individual capacity. Arbitration of "group, class, or representative" claims is prohibited. Doc. #1-1, PageID##101-02.

Plaintiff Wilma Brown worked at Henny Penny for approximately 30 years. On December 31, 2014, when the ESOP transaction took place, her individual stock account was allocated 83.892 shares of Henny Penny stock. The Complaint alleges that she "is a participant in the Plan and is vested in shares of Henny Penny allocated to her account in the Plan." Doc. #1, PageID#2. Brown left Henny Penny in May of 2015, and, in November of 2016, she cashed out of the Plan. Doc. #18, PageID##264-65.

On July 27, 2017, Brown filed suit against Wilmington Trust, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company, on behalf of the Henny Penny Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated. She generally alleges that Wilmington Trust paid more than the fair market value for the stock, relying on a

3

faulty valuation, and paying a "control premium" for the stock even though the Cobbs remained in control of Henny Penny following the ESOP transaction. She maintains that Wilmington Trust is liable for the difference between the price paid by the Plan and the actual value of the stock.

The Complaint asserts three causes of action under ERISA: (1) Causing and Engaging in Prohibited Transactions Forbidden by ERISA, 29 U.S.C. § 1106 (prohibiting transactions between a plan and a party in interest); (2) Invalidation of Arbitration Procedure and Full Satisfaction/Release of Claims Provisions Pursuant to ERISA, 29 U.S.C. § 1132(a)(3); and (3) Violations of ERISA, 29 U.S.C. §§ 1110 and 1104(A)(1), stemming from Plan provisions purporting to relieve Wilmington Trust of liability. Plaintiff seeks a variety of declaratory and injunctive relief, and asks that the Court order that any recovery for losses to the Plan be allocated to the individual accounts of class members. Doc. #1.

On September 28, Henny Penny filed a Motion to Intervene as a Limited-in-Scope Third Party Plaintiff. Doc. #11. By separate Order, the Court has sustained that motion. This matter is currently before the Court on Henny Penny's Motion to Compel Individual Arbitration and to Strike Any Claims Purportedly Brought on a Class or Representative Basis, Doc. #13, and on Wilmington Trust's Motion to Compel Arbitration, Doc. #14. Wilmington Trust has also joined in Henny Penny's motion. After both motions were fully briefed, the parties each submitted Notices of Supplemental Authority, Docs. ##21, 24, 27 and 30, and response briefs, Docs. ##22, 25, 29.

II. **Motions to Compel Individual Arbitration and to Strike Claims Purportedly Brought on a Class or Representative Basis (Docs. ##13 and 14)**

Pursuant to 9 U.S.C. § 4, Henny Penny and Wilmington Trust have filed motions to compel Plaintiff to arbitrate her claims, and to do so on an individual basis, not on behalf of the entire Plan and its participants.[2] They note that the Plan was amended in January of 2017, to include the following Arbitration Procedure:

> **12.21 Mandatory and Binding Arbitration Procedure ("Arbitration Procedure").** As a condition to any (i) Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims.
>
> **(a) Covered Claims.** Any claim by a Claimant which arises out of, relates to, or concerns this Plan, the Trust, or the Trust Fund, including without limitation, any claim for benefits under the Plan, Trust, or Trust Fund; any claim asserting a breach of, or failure to follow, the Plan or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect. . . .
>
> **(b) No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective,

---

[2] The Federal Arbitration Act provides that a party aggrieved by the alleged failure of another to arbitrate under a written agreement may petition the district court for an order compelling arbitration. 9 U.S.C. § 4.

5

or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. . . .

* * *

**(k) Covered Claims Includes Claims Against Fiduciaries and/or Non-Fiduciaries.** This Arbitration Procedure shall apply to all Covered Claims asserted by a Claimant, whether such Covered Claims (i) are asserted against one or more of the Plan's fiduciaries or alleged fiduciaries, including but not limited to the Committee and/or Trustee; and/or (ii) are asserted against the Employer or any other non-fiduciary (e.g., a Plan service provider).

Doc. #1-1, PageID##101-04.

Plaintiff maintains that, for a variety of reasons, she is not bound by this Arbitration Procedure: (1) she did not agree to arbitrate, given that the provision was added to the Plan after she left Henny Penny; (2) she received no consideration in exchange for the arbitration amendment; and (3) because she falls outside the Plan's definition of a "Claimant," her claims are not "Covered Claims," so the Arbitration Procedure does not apply to her. Plaintiff further argues that the Arbitration Procedure is generally unenforceable because: (1) there is no mutual obligation to arbitrate; (2) it impairs substantive statutory rights; and (3) it violates ERISA's anti-cutback provision, 29 U.S.C. § 1054(g).

The Court need not reach all of these arguments. For two reasons, the Court finds that the Arbitration Procedure does not apply to Plaintiff's claims. She did not agree to arbitrate and, even if she did, her specific claims fall outside the scope of the Arbitration Procedure. Accordingly, the Court overrules the motions

to compel arbitration and to strike any claims purportedly brought on a class or representative basis.

   A.   **Relevant Law**

The Federal Arbitration Act ("FAA") states that a written provision to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[3] Plaintiff, as the party resisting arbitration, bears the burden of proving that the claims at issue are not subject to arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Sixth Circuit has specifically upheld mandatory arbitration provisions in plans governed by ERISA. *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 932 (6th Cir. 2014). Moreover, class waivers in arbitration agreements are enforceable even if the statute at issue expressly permits collective actions. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311 (2013). *See also Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (holding that the right to "engage in other concerted activities" under the NLRA does not manifest congressional intent to displace the FAA).

---

[3] "[G]enerally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

7

Nevertheless, as the Sixth Circuit noted in *Simon v. Pfizer, Inc.*, 398 F.3d 765 (6th Cir. 2005), "no matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Id.* at 775 (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)). *See also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (holding same).

> When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Here, because the Court finds that Plaintiff did not agree to arbitrate and, even if she did, her claims are outside the scope of the Arbitration Procedure, the Court need not address the remaining tasks.

### B. Plaintiff Did Not Agree to Arbitrate

Plaintiff first argues that she is not bound by the Plan's Arbitration Procedure because she never agreed to it. She left Henny Penny in May of 2015, and completely cashed out of the Plan in November of 2016. Doc. #18, PageID##264-65. The Arbitration Procedure was not added to the Plan until January of 2017. Plaintiff filed suit in July of 2017.

Henny Penny and Wilmington Trust argue that, because the breach-of-fiduciary-duty claims belong to the Plan[4] and the Plan has consented to arbitration, it does not matter that Plaintiff did not personally agree to arbitrate the claims. They further argue that Plaintiff is subject to the Arbitration Procedure under a theory of equitable estoppel.

In support of the first argument, Henny Penny and Wilmington Trust rely on *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922 (6th Cir. 2014). When Smith retired in 2000, he was given a lump sum benefit; thereafter, he also received monthly pension payments. In 2007, a venue provision was added to the pension plan, requiring all lawsuits related to the plan to be filed in federal court in Iowa. In 2011, the plan informed Smith that it had been overpaying him for the past eleven years and would be eliminating his monthly payments until it had recouped the money. Smith filed suit in federal court in Kentucky, alleging violations of ERISA. The district court dismissed the suit without prejudice, citing the plan's venue selection clause.

Smith appealed, but the Sixth Circuit affirmed. It noted that pension plan administrators "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.* at 930. Smith argued that the

---

[4] In *LaRue v. Dewolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008), the Supreme Court held that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."

9

venue provision was invalid because it was not the product of an arms-length transaction. The court rejected this argument. *Id.* It further held that, even though the venue selection provision was added eight years after Smith retired, his claims did not accrue until 2011, when the plan informed him of the overpayment. The court reasoned that, because the venue selection clause was added after his claims accrued, he was bound by it. *Id.* at 931. Citing *Smith*, Henny Penny and Wilmington Trust argue that, because the Arbitration Procedure was in effect when Brown filed suit, she is bound by it.

Plaintiff argues that *Smith* is factually distinguishable in two important respects. First, the venue selection clause was added while Smith was still an active participant in the pension plan. In contrast, by the time the Arbitration Procedure was added to the Plan, Plaintiff had completely cashed out her account and had ceased all participation in the Plan. In addition, while Smith's cause of action accrued after the venue selection clause was added to the pension plan, Plaintiff's cause of action accrued in 2014, when the ESOP transaction took place, more than two years before the Arbitration Procedure was added to the Plan.

Plaintiff argues that this case is more analogous to *Dorman v. Charles Schwab & Co., Inc.*, No. 17-cv-285, 2018 WL 467357 (N.D. Cal. Jan. 18, 2018). In *Dorman*, the plaintiff left the company, cashed out his account balance in the retirement savings plan, and ceased all participation in the pension plan. He later filed suit under ERISA to recover losses to the pension plan that stemmed from allegedly prohibited transactions and breaches of fiduciary duty.

In denying the defendant's motion to compel arbitration, the court held that the plan document containing the arbitration provision "does not bind Dorman because it was executed after he ceased all participation in the Plan." *Id.* at *5. The court further held that because the plan document was executed unilaterally by the plan sponsor—the same fiduciary whose actions were being challenged in the lawsuit—plaintiff should not be prevented from pursuing his claims in court. Allowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty "would, in a sense, be allowing the fox to guard the henhouse." *Id.* (quoting *Munro v. Univ. of S. California*, 2017 WL 1654075, at *6 (C.D. Cal. Mar. 23, 2017)).[5]

Based on the factual distinctions noted by Plaintiff, the Court finds that *Smith* is not controlling authority. Neither is *Dorman* controlling authority, but it is somewhat persuasive.[6] Although plan administrators and employers have broad discretion to modify the terms of a plan, those modifications do not necessarily bind individuals like Plaintiff, who have ceased all participation in the plan and whose cause of action accrued prior to the modification. Under the circumstances

---

[5] Plaintiff notes that the Arbitration Procedure was added to the Plan only after Wilmington Trust lost at trial in a similar case involving ERISA violations in another ESOP transaction. *See Brundle v. Wilmington Trust, N.A.*, No. 1:15-cv-1494, 2017 WL 979106 (E.D. Va. Mar. 13, 2017).

[6] The other supplemental authorities filed by Plaintiff, *Cullinane v. Uber Technologies, Inc.*, No. 16-2023, 2018 WL 3099388 (1st Cir. June 25, 2018), and *AT&T Mobility Servs. LLC v. Jean-Baptiste*, No. 17-11962, 2018 WL 3425734 (D.N.J. July 16, 2018), are so factually dissimilar that they are of little use.

presented here, the Court concludes that Plaintiff is not bound by the Arbitration Procedure.

Henny Penny and Wilmington Trust also argue that, because Plaintiff seeks additional payments from the Plan, she is subject to the Arbitration Procedure under an equitable estoppel theory. The doctrine of equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes as well." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). *See also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a *direct* benefit from the contract while disavowing the arbitration provision"); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (the doctrine of equitable estoppel "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.").

Here, however, Plaintiff is not seeking to enforce any of the terms of the Plan or alleging a breach of any of its provisions. She is not seeking any direct benefit from the Plan itself, and her claims do not arise from the Plan document. Instead, her claims are wholly *statutory* in nature, brought under ERISA to remedy

alleged breaches of fiduciary duty by the Trustee, which resulted in losses to the Plan.

In similar circumstances, courts have refused to apply the doctrine of equitable estoppel to bind a non-signatory to an arbitration agreement. For example, in *Tennessee Tractor, LLC v. WH Administrators, Inc.*, No. 1:17-cv-2829, 2018 WL 1277751 (W.D. Tenn. Mar. 12, 2018), the district court recently refused to bind the non-signatory plaintiff to an arbitration agreement that was contained in a health agreement between his employer and a third-party provider. The court noted that the plaintiff was not seeking to enforce the third-party provider's contractual obligations to the employer, but was instead seeking to enforce the third-party provider's statutory obligations under ERISA. *Id.* at *3. *See also Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) (equitable estoppel did not apply where plaintiff, who was simply a plan participant, did not seek to enforce the terms of a management agreement or benefit from that agreement, but rather brought breach-of-fiduciary-duty claims under ERISA). As in these cases, the Court finds that the doctrine of equitable estoppel does not apply to bind Plaintiff to the Arbitration Procedure.

### C. Plaintiff's Claims Fall Outside the Scope of the Arbitration Procedure

Even assuming *arguendo* that Plaintiff is deemed, under one of the theories discussed above, to have agreed to arbitrate her claims, the claims that she has asserted fall outside the scope of the Arbitration Procedure. As previously discussed, the enforceability of an arbitration agreement is a matter of contract

law. "When an arbitration clause by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included." *Simon*, 398 F.3d at 775.

As noted above, the Arbitration Procedure at issue reads as follows:

**12.21 Mandatory and Binding Arbitration Procedure ("Arbitration Procedure").** As a condition to any (i) Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims.

    **(a) Covered Claims.** Any claim *by a Claimant* which arises out of, relates to, or concerns this Plan, the Trust, or the Trust Fund, including without limitation, any claim for benefits under the Plan, Trust, or Trust Fund; any claim asserting a breach of, or failure to follow, the Plan or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect. . . .

    **(b) No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the *Claimant's* individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that *Claimant* may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the *Claimant*. . . .

\* \* \*

    **(k) Covered Claims Includes Claims Against Fiduciaries and/or Non-Fiduciaries.** This Arbitration Procedure shall apply to all Covered

14

> Claims asserted *by a Claimant*, whether such Covered Claims (i) are asserted against one or more of the Plan's fiduciaries or alleged fiduciaries, including but not limited to the Committee and/or Trustee; and/or (ii) are asserted against the Employer or any other non-fiduciary (e.g., a Plan service provider).

Doc. #1-1, PageID##101-04 (emphasis added).

This Arbitration Procedure encompasses a wide variety of claims, including claims of breach of fiduciary duty asserted against a Trustee. Nevertheless, by its terms, the Arbitration Provision applies only to "Covered Claims," and "Covered Claims" include only claims asserted "by a Claimant." Because Plaintiff falls outside the Plan's definition of a "Claimant," her claims are not "Covered Claims." Accordingly, they are not subject to the Arbitration Procedure.

A "Claimant" is defined by the Plan as "an Employee, Participant, or Beneficiary." Doc. #1-1, PageID#39. It is undisputed that Plaintiff is no longer an Employee, and she is not a Beneficiary. Accordingly, she is a "Claimant" only if she is a "Participant."

The Plan defines a "Participant" as "anyone who has met the eligibility and participation requirements under Article 2." *Id.* at PageID#45. It is undisputed that Plaintiff satisfies this requirement. Nevertheless, the definition of a "Participant" also states that "an individual who is no longer an Employee will cease to be a Participant if his or her entire Plan benefit: . . . (b) is paid in a lump sum distribution which represents such individual's entire interest in the Plan." *Id.* The "Plan" is defined as "the Henny Penny Corporation Employee Stock Ownership Plan." *Id.* at PageID#46.

15

Given that Plaintiff has terminated her employment, cashed out the entire balance in her ESOP account, and ceased all participation in the Plan, she no longer qualifies as a "Participant." Accordingly, she cannot be a "Claimant," as that term is defined by the Plan. Therefore, her claims are not subject to the Arbitration Procedure.

Henny Penny and Wilmington Trust argue that a finding that Plaintiff was "paid in a lump sum distribution which represents such individual's entire interest in the Plan" is completely inconsistent with her claim that she is entitled to recover additional benefits from losses that resulted from Wilmington Trust's alleged wrongdoing.

The Court disagrees. "The general principles of contract law dictate that we interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). The Plan expressly states that a former employee "will cease to be a Participant if his or her entire Plan benefit: . . . (b) is paid in a lump sum distribution which represents such individual's entire interest in the Plan." Doc. #1-1, PageID#45.

Here, Plaintiff was allocated a certain number of shares in the ESOP. She terminated her employment and, in November of 2016, she cashed out her entire ESOP account. Doc. #18, PageID#265. Her entire Plan benefit was paid in one lump sum, representing her entire interest in the ESOP on that date. Giving the Plan language its plain and ordinary meaning, she then ceased to be a "Participant" in the Plan.

16

Plaintiff alleges that Wilmington Trust paid more than the fair market value when it purchased the shares of stock from the Cobb family, thereby causing injury to the Plan. If Plaintiff succeeds on her claims of breach of fiduciary duty, and recovers some or all of the alleged losses on behalf of the Plan, she and others will receive a proportionate share of any recovery. However, it does not change the fact that Plaintiff ceased to be a "Participant" when she received her lump sum payment.

Henny Penny and Wilmington Trust note that the Complaint alleges that "Plaintiff is a participant in the Plan and is vested in shares of Henny Penny allocated to her account in the Plan." Doc. #1, PageID#2. They maintain that Plaintiff cannot have it both ways; because she admits that she is "a participant in the Plan," she must be deemed a "Participant" for purposes of the Arbitration Provision.

Not so. A former employee may be deemed a "participant" for purposes of *standing* to bring an ERISA claim, and yet fall outside the Plan's definition of a "Participant" who is bound by the Arbitration Provision.

ERISA broadly defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C.

17

§ 1002(7). The Supreme Court has interpreted this to include former employees who have "a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (internal quotation omitted).

The Sixth Circuit has held that a former employee alleging a breach of fiduciary duty "has 'participant' standing despite having 'cashed out' his defined-contribution plan." *Bridges v. Am. Elec. Power Co.*, 498 F.3d 442, 445 (6th Cir. 2007). Nevertheless, the fact that Plaintiff has statutory standing, as a "participant," to assert claims on behalf of the Plan does not necessarily mean that she qualifies as a "Participant" who is contractually bound by the Plan's Arbitration Procedure. Because Plaintiff was paid a lump sum distribution, representing the entire interest in her ESOP account, she is no longer a "Participant" in the Plan, as the Plan has defined that term. In turn, she does not fall within the Plan's definition of a "Claimant" and her claims are not "Covered Claims."

Accordingly, the Arbitration Procedure does not apply. Plaintiff need not submit her claims to binding arbitration. Nor is she prohibited from pursuing claims on behalf of a class of others who may have been deprived of benefits as the result of Wilmington Trust's alleged violations of ERISA.[7]

---

[7] Henny Penny and Wilmington Trust argue that, if the Court finds that Plaintiff is not subject to the Arbitration Procedure, then she does not have standing to challenge it. They therefore argue that Count II of the Complaint, which seeks to invalidate the Arbitration Procedure, should be dismissed. Although the Court is inclined to agree, this argument lies beyond the scope of this Decision and Entry. It may be raised by the parties in a subsequent motion.

## III. Conclusion

For the reasons set forth above, the Court OVERRULES the Motion of Henny Penny Corporation to Compel Individual Arbitration and to Strike Any Claims Purportedly Brought on a Class or Representative Basis, Doc. #13, and Wilmington Trust, N.A.'s Motion to Compel Arbitration, Doc. #14.

The previously-imposed stay, *see* Doc. #9, is lifted. The Court will schedule a Preliminary Pretrial Conference after Wilmington Trust files its Answer or other responsive pleading.

Date: July 23, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE